J-S02002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.A.G.-B., MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.L.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1945 EDA 2021 |

Appeal from the Decree Entered June 24, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2021-A0033

| | | |
|---|---|---|
| IN RE: Z.L.R.G.-B., MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.L.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1946 EDA 2021 |

Appeal from the Decree Entered June 24, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2021-A0034

BEFORE:  OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 28, 2022**

In these consolidated appeals,[1] S.L.B. ("Mother") appeals from the decrees entered on June 24, 2021, involuntarily terminating her parental rights to J.A.G.-B. (a male born in April 2019), and Z.L.R.G.-B. (a female

---

[1] In a December 20, 2021 *per curiam* order, this Court consolidated the two appeals *sua sponte*.

born in July 2017), (collectively, "the Children"), pursuant to Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938.[2] We affirm.

We summarize the facts and procedural history of this case as follows. Mother has a history of prior involvement with the Montgomery County Office of Children and Youth ("OCY" or "the Agency"), both as a child and as a mother. N.T., 6/24/21, at 50. Mother has seven children, none of whom are in her care. *Id.* In the present case, OCY received a referral at or near the time of J.A.G.-B.'s birth in April 2019. Mother gave birth to J.A.G.-B. at home before being transported to the hospital where Mother tested positive for fentanyl, oxycodone, and opiates. *Id.* at 40. Soon after, in May 2019, OCY received another referral, this time for Z.L.R.G.-B., then age two, who ingested heroin and required two doses of Narcan to be revived. *Id.* at 41 and 94. As a result, OCY implemented a safety plan which placed Children with maternal relatives and prohibited Mother from unsupervised contact with Children. *Id.* at 43. On June 10, 2019, OCY discovered that Mother violated the safety plan, thus OCY took emergency custody of Children and placed them in an OCY foster home where they have remained. *Id.* at 43-44. Children were adjudicated dependent on July 16, 2019. *Id.*

---

[2] On the same day, the trial court terminated the parental rights of J.G., Z.L.R.G.-B.'s natural father, who voluntarily relinquished his rights. N.T., 6/24/21, at 12-18, 98. Similarly, the trial court involuntarily terminated the parental rights to any unknown natural father with respect to J.A.G.-B. *Id.* at 98. Neither J.G. nor any unknown father are involved in this appeal.

Throughout the pendency of this case, OCY created four family service plans (FSPs) for Mother, all of which included the following permanency objectives: address her mental health needs; address substance abuse needs; provide safe and stable housing; demonstrate financial security; participate in supervised visitation with the Children; and improve her parenting skills. *Id.* at 59, 62. Four permanency review hearings were held wherein Mother showed minimal progress on her permanency goals.[3] *Id.* at 80. Consequently, on April 6, 2021, OCY filed petitions for involuntary termination of Mother's parental rights to Children pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (8), and (b).

The trial court held a termination hearing on June 24, 2021.[4] Although her counsel was present and confirmed that Mother was notified of the hearing, Mother failed to attend and provided no explanation. *See id.* at 8-9. At the hearing, OCY presented the testimony of OCY caseworkers Amber Crosby and Paige Smedley, JusticeWorks YouthCare supervisor Deseree Purdy, and Gaudenzia administrative case manager Sabrina Moore. At the conclusion of testimonial evidence, the trial court set forth its findings

---

[3] Although her presence was required, Mother failed to attend two of the four permanency review hearings despite those hearings being held virtually.

[4] Throughout the proceedings before the trial court and on appeal, Mother was represented by Damien D. Brewster, Esq. Amy S. Newman, Esq. was appointed as guardian *ad litem* (GAL) to represent Children's legal and best interests. *See In re T.S.*, 192 A.3d 1080, 1092-1093 (Pa. 2018) (holding "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests[.]").

of fact and conclusions of law on the record. Specifically, the trial court found the following:

> Turning to the facts established in this case by [OCY], the children were removed from the home on June 10th 2019, and placed in a foster care home that is now the pre-adoptive home where both children are placed together.
>
> Since that time, [OCY] has had four [FSPs] for [] Mother setting forth goals she should attempt to meet in order to be reunified with her children. [OCY] has provided a case timeline and a visit log with respect to [] Mother that are now part of the record as well.
>
> [] Mother, although she expresses her love and affection for the children and has had visits with the children since the onset of the case, her last in-person visit was March 10th, 2020, according to the testimony. After that time, [OCY] instituted virtual video visits during the COVID-19 pandemic.
>
> However, in August of 2020, [] Mother was offered in-person visits on the conditions that she both get a negative COVID test because one of her children has respiratory issues that could be affected by transmission of the disease and [] she comply with drug screens as required by [OCY]. The testimony of the caseworker was that [Mother] was aware of these two conditions for resuming in-person visits. Nevertheless, since August 2020 to the present date, [] Mother has failed to comply with these two conditions.
>
> With respect to drug testing by [OCY], [] Mother has not complied with any of the attempts to obtain a drug screen or the contacts from the OCY caseworker to meet with her and obtain a drug screen since August of 2020. On at least five occasions since August of 2020, a twenty-four-hour notice [to submit to a drug screen] was left [at Mother's confirmed residence,] to which she did not respond[. OCY presumes noncompliance with each notice] to be positive. On other occasions[, Mother] simply was not available, was not at home, or otherwise evaded meeting with the caseworker for the purpose of complying with required drug testing.
>
> [The record also demonstrates,] based upon the drug screen log, that prior to August of 2020, [Mother] also had some presumed

positive tests, some negative tests, and some positive tests for methamphetamines and [PCP] in early 2019, early in the case.

[] Mother had a number of goals that she was required to meet by [OCY] throughout the history of the case. She did get drug and alcohol evaluations, as required, on two occasions but did not comply with the recommendations for outpatient treatment from Gaudenzia. She sought a third evaluation in April of 2021, but failed to attend her appointment.

[Mother] failed to comply with her mental health treatment [or] provide evidence of compliance to the [OCY] caseworker.

[Mother] failed to attend the last two permanency review hearings that were conducted virtually and which she could have attended virtually. She failed to attend the hearing today or attempt to make any arrangements to either seek a continuance or seek an opportunity to attend virtually today's hearing.

Her visit coaching services through JusticeWorks were terminated due to her failure to comply with the conditions for resuming in-person visits with her children.

Looking at the six-month period prior to the filing of the petition, during that entire period[, Mother] has had no in-person visits with the children and has made no progress on her [FSP] goals with respect to drug and alcohol treatment, substance abuse treatment, mental health treatment, or improving her relationship and parenting skills with respect to both of her children.

One of [Mother's] goals was to obtain housing, which she did. She obtained housing with the assistance of Your Way Home, but the caseworker [] testified that she subsequently lost her funding to support her continued residence in that home, [that being] the rent subsidy that she had through Your Way Home[. Thus that housing] doesn't appear to be a sustainable living situation at this time.

Equally, another one of her [FSP] goals was to obtain financial stability, employment, and to be able to provide for herself and her children[. Mother] has not provided evidence of employment to the caseworker since January of 2020.

***Id.*** at 102-106 (some paragraphing edited). Thus, the trial court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (8), and (b) in open court, ***see id.*** at 113-114, and entered the same ruling by decrees entered on June 24, 2021. This consolidated appeal followed.[5]

On appeal, Mother raises the following issues for review:

1. Did the trial court err in terminating [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) where the evidence at trial failed to establish by clear and convincing evidence that Mother failed to perform parental duties during the six month time period immediately preceding the filing of the petitions to terminate parental rights?

2. Did the trial court err in terminating [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) where the evidence at trial failed to establish by clear and convincing evidence that any alleged repeated and continued incapacity cannot or will not be remedied by [] Mother?

3. Did the trial court err in terminating [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8) where the evidence at trial failed to establish by clear and convincing evidence that termination of [] Mother's parental rights would best serve the needs and welfare of the children?

4. Did the trial court err in terminating [Mother's] parental rights where the evidence at trial failed to establish by clear and convincing evidence that the developmental, physical[,] and emotional needs and welfare of the children will be best served by termination of [] Mother's parental rights?

_____

[5] On July 26, 2021, Mother filed a concise statement of errors complained of on appeal along with separate notices of appeal for each child pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court subsequently filed a Rule 1925(a) opinion on August 31, 2021, expressly adopting its findings of fact and conclusions of law as stated in open court at the termination hearing. ***See*** N.T., 6/24/21, at 98-120.

Mother's Brief at 7 (re-numbered; extraneous capitalization omitted).

We review an appeal of a termination of parental rights according to an abuse of discretion standard.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis of the grounds for termination followed by an assessment of the needs and welfare of the child.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing

- 7 -

evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the [trial] court determines that the parent's conduct warrants termination of his or her parental rights does the [trial] court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is "so clear, direct, weighty, and convincing as to enable the trier[-]of[-]fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Z.P.*, 994 A.2d 1108, 1116 (Pa. Super. 2010) (citation omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Instantly, we conclude that the certified record supports the decrees pursuant to Section 2511(a)(1) and (b), which provide as follows.

**§ 2511. Grounds for involuntary termination**

**(a) General rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the

- 8 -

child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b); *see also In re B.L.W.*, 843 A.2d at 384.

To satisfy the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted). It is well-established that "Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child **and** refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child **or** fails to perform parental duties." *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) (emphasis in original) (citation omitted).

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his[, or her,] ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child

- 9 -

relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with the child's physical and emotional needs.

*In re Z.P.*, 994 A.2d at 1119 (citation and original brackets omitted). Our Supreme Court explained that parental duty "is best understood in relation to the needs of a child." *In re Burns*, 379 A.2d 535, 540 (Pa. 1977).

> A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'

*Id.* (citations omitted). Additionally,

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

Mother argues that OCY did not meet its evidentiary burden under Section 2511(a). Specifically, Mother argues that she "requested and attended frequent visits with the Children; provided supervision, love, and affection during those visits; maintained a loving bond with them; and

- 10 -

obtained housing which was suitable for Mother and the Children and met OCY's specifications." Mother's Brief at 14 (punctuation edited).

Based on the testimony and evidence elicited at the termination hearing, the trial court concluded OCY established clear and convincing evidence that Mother "failed to perform any parental duties for a period of more than six months prior to the filing" of the instant petitions. N.T., 6/24/21, at 108-109. It determined that within the six-month period preceding the termination petition, Mother made no progress on her FSP goals including drug and alcohol treatment, substance abuse treatment, mental health treatment, or improving her relationship and parenting skills. *Id.* at 105. Moreover, Mother failed to obtain employment or financial stability. *Id.* at 106. While Mother did obtain housing with the assistance of Your Way Home, she lost the financial assistance offered by that program; thus, the sustainability of such living situation became questionable. *Id.* at 106. The trial court also credited Mother's love and affection for Children and attendance during virtual visits, but emphasized that it was her own noncompliance with the required conditions that prevented in-person visitation. *Id.* at 103. JusticeWorks terminated her visit coaching services, and she never progressed beyond supervised visitation with Children. *Id.* at 105, 111.

At the time of the termination hearing, Children were in placement for two years, constituting the majority of J.A.G.-B.'s and half of Z.L.R.G.-B.'s

lives. During that period, Mother did not fulfill any of her FSP objectives. Overall, Mother thwarted caseworker's attempts to help her achieve these goals and remained uncooperative throughout the case. OCY caseworker, Ms. Smedley, testified that her last meeting with Mother occurred on August 3, 2020, after which "[t]here have been scheduled appointments for me to meet with [Mother, but] she texted me that she's not home[,] doesn't answer the door[,] or she fails to respond to my attempts to meet with her." *Id.* at 76.

Regarding mental health, since June 2019, Mother neither provided documentation of a mental health evaluation nor completed any mental health treatment despite suffering a mental breakdown in March 2020 which necessitated a week-long hospitalization at Horsham Clinic. *Id.* at 64-68.

Regarding substance abuse, Mother obtained evaluations but never followed through with recommended treatment. Mother undertook two drug and alcohol evaluations, the second being required "[b]ecause she failed to comply with the recommended services within the allotted time frame, and she had to be reassessed for services." *Id.* at 66. Mother never documented her completion of any drug and alcohol treatment. Moreover, of the required drug screens, Mother complied with only nine of 29 attempts between June 2019 and May 2021, the last submission being February 20, 2020. *Id.* at 70-71, 72. Specifically, Ms. Smedley explained that Mother

received 11 twenty-four-hour notices[6] but complied once, in which she tested positive for methamphetamines.

Regarding employment and housing, Mother failed to secure stable arrangements that demonstrated that she could provide for her own or the Children's needs. Mother provided a single paystub from McDonalds in January 2020; however, in the same month she informed Ms. Smedley that she was no longer employed because it was too far from her home. *Id.* at 63. While Mother obtained suitable housing through Your Way Home, Ms. Smedley expressed her concern for whether Mother could sustain such accommodations because "she's no longer receiving the rental payments [from Your Way Home,] the home rent is $1,200[.00] a month, and she doesn't have suitable employment that she's made me [aware] of to be able to cover that rent each month." *Id.* at 91. Since January 2020, Mother did not report any employment to OCY despite being requested to do so. *Id.* at 63-64.

Finally, regarding visitation and Mother's overall parenting skills, Mother never progressed from supervised visitation. *Id.* at 80. Mother's last in-person visit with Children was March 10, 2020, approximately fifteen

---

[6] "A twenty-four-hour notice is a document that is left for the parents when an attempted drug screen is made at their home, and the notice is left on their door or in their mailbox for them to comply with the drug screen within twenty-four hours or else it would be considered presumed positive for all drugs." N.T., 6/24/21, at 71. Ms. Smedley discussed with Mother the consequences of noncompliance with a twenty-four-hour notice on multiple occasions. *Id.*

months prior to the termination hearing. *Id.* at 80. Due to the COVID-19 global pandemic, visits were held virtually. *Id.* at 79. Mother consistently attended virtual visits. Ms. Purdy testified that during some of these virtual visits, Mother dressed inappropriately or "wasn't able to appropriately interact with the children because of whatever mental health issues she was experiencing at that time." *Id.* at 32-33.

Since August 2020, Mother was offered the opportunity to transition back to in-person visitation on the conditions that she submit to drug screening and produce negative COVID-19 test, however, Mother failed to abide by these conditions. *Id.* at 29, 74-75, 79-80. Had Mother complied, she could have attended 42 in-person visits with Children. *Id.* at 80.

Upon review, we conclude that competent evidence supported the trial court's determination that OCY presented clear and convincing evidence to terminate Mother's parental rights pursuant to Section 2511(a)(1). Most strikingly, Mother failed to attend the termination hearing, thus she did not provide any explanation for her conduct to refute OCY's claims. *Id.* at 107. Therefore, her first issue is without merit.[7]

Once the trial court determines that termination of parental rights is warranted under Section 2511(a), the trial court is required to engage in an

---

[7] Because we find that the trial court did not abuse its discretion in finding that OCY provided clear and convincing evidence warranting termination of Mother's parental rights under Section 2511(a)(1), we need not address Mother's remaining claims involving Section 2511(a)(2) or (8). *See In re B.L.W.*, *supra*. Accordingly, we proceed to an evaluation of Children's best interests and welfare under Section 2511(b).

analysis pursuant to Section 2511(b) to determine whether termination is in the best interests of the child. "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856 (internal citations omitted). Accordingly, while the focus in terminating parental rights under Section 2511(a) is on the parent, that focus shifts to the child pursuant to Section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

In the context of a Section 2511(b) analysis, "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, 994 A.2d at 1121.

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. *In re K.K.R.S.*, 958 A.2d 529, 533-536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003).

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Equally, the trial court should consider "whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. "Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). The court is not required to use expert testimony; social workers and caseworkers may offer evaluations as well. *In re Z.P.*, 994 A.2d at 1121. Ultimately, the concern is the needs and welfare of a child. *Id.* Moreover, a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *See id.* at 1116; *In re I.J.*, 972 A.2d 5, 9 (Pa. Super. 2009) ("a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting").

Moreover,

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*In re Z.P.*, 994 A.2d at 1121, *quoting In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000). Similarly, the trial court may emphasize the safety needs of

- 16 -

the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d at 103.

Here, Mother argues that there was insufficient evidence for the trial court to conclude that the Children's developmental, physical and emotional needs would be best served by terminating her parental rights because "she and the Children share a loving bond." Mother's Brief at 18. In support of her claim, Mother solely relies on evidence indicating her love and affection for the Children. *Id.* at 18-19 (arguing that caseworkers testified that they observed love and affection, and that Mother expressed her love for the Children to them).

Regarding Section 2511(b), the trial court stated:

In this case, the evidence demonstrated that [] Mother loves the two children; although, her bond with the younger child, [J.A.G.-B.,] with whom she has not resided since he was two months old, is even less than a bond with the older child[, Z.L.R.G.-B.]

[] Although she has love and affection for the children and has attended video visits, [] Mother simply has not done the work to sustain a parent/child bond with each of these children, particularly in failing to take the opportunity to make herself available to attend in-person visits and to continue her work with JusticeWorks with their support to make the visits meaningful and to deepen her relationship with each of the children and to provide them one-on-one care, love, affection, and support in an in-person setting.

She never progressed beyond supervised visitation with the children, and she never met the [FSP] goals of providing for the children financially, providing safe and stable housing, and in particular, addressing her mental health needs and her substance abuse needs.

> For all of these reasons, the bond between the children and []
> Mother has become attenuated, and the children are, by
> contrast, safe and secure, loved, and supported in the foster
> home and have developed a bond with the foster mother.

N.T., 6/24/21, at 110-111. Accordingly, the trial court concluded:

> In this case, the testimony clearly established that [] Mother has
> not maintained sufficient ongoing and enduring contact, love,
> and support, and has not taken advantage of the opportunities
> provided to her to develop a deeper parental relationship with
> her children, and there is an insufficient parental bond between
> birth mother and the two children. Therefore, severing this
> natural relationship will not be contrary to the needs and welfare
> of the [C]hildren.

*Id.* at 112.

We find that competent evidence supports the trial court's conclusion that the Children will not be harmed by termination of Mother's parental rights. While Mother correctly notes that caseworkers acknowledged her love for the Children, *see id.* at 46, 86, a parent's love and affection alone will not preclude termination. *Z.P.*, *supra*. Moreover, Mother disregards the credited testimony from the same witnesses that the Children would not be irreparably harmed if Mother's parental rights are terminated. N.T., 6/24/21, at 86.

Conversely, unequivocal testimony described the strong, stable, supportive, and loving bond that the Children shared with Foster Mother, who appropriately provided for their needs and welfare since June 2019 and presented as an adoptive resource. *Id.* at 82-83. Ms. Smedley testified the Children "are doing wonderfully. They're very well adjusted to be with

[Foster Mother.] [J.A.G.-B.] has been with her since he was less than two months old. As far as he's aware, [Foster Mother] is the only caregiver that has ever been consistently in his life and met his needs." *Id.* at 83. Moreover,

> [the Children] are frequently looking to [F]oster [M]]other for reassurance and approval. If they have a need that's being met, they are comfortable in going back to her and asking for her support. They're affectionate towards her and sit on her lap and hug her and give her kisses, which seems to be a very positive interaction. And there's never been reason [ ] to feel concerned that their needs are not being met.

*Id.* at 84. It is Foster Mother who tends to the Children's medical and emotional needs. *Id.* at 84-85. Therefore, the trial court did not err or abuse its discretion in concluding that the Children's developmental, physical, and emotional needs and welfare necessitate the involuntary termination of Mother's parental rights pursuant to Section 2511(b).

As we have determined that clear and convincing evidence supported the trial court's termination of Mother's parental rights pursuant to Section 2511(a)(1) and (b), we affirm the trial court decrees.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2022

- 19 -